**LINDABURY, MCCORMICK & ESTABROOK**
53 Cardinal Drive
P.O. Box 2369
Westfield, N.J. 07091
(908) 233-6800
Attorneys For Defendants
JHS-1451

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

_____
                                            :
JOHN HORTON                                 : CIVIL ACTION NO.:04-5658 (JAG)
                                            :
           Plaintiff,                       :
                                            :
     -vs-                                   :
                                            :
                                            : DEFENDANTS' L. CIV. R. 56.1
ROSS UNIVERSITY SCHOOL OF MEDICINE,         : STATEMENT
et al                                       :
                                            :
           Defendants                       :
_____

1.   Ross University is a foreign corporation located in and organized under the laws of Dominica, West Indies. Dominica Management, Inc. is a New York corporation that provides the university with various management and support services out of offices located in Edison, New Jersey. Dominica Management does not, however, "control" the university's operations as that term is defined under 42 U.S.C. Sec. 2000e-1.

2.   In January 2003, Ross University advertised for the position of Medical Library Director for its medical school located in Dominica, seeking to hire a Medical Library

333136v1

Director who, among other things, had a masters degree in library sciences, had five (5) to eight (8) years experience in an academic research or medical school library setting, had three (3) to five (5) years experience in supervising professional librarians, and had experience with current information services in academic medicine. (Ex. To the accompanying Supporting Certification of Kathleen M. Connelly ("Connelly Cert.")).

3.  By e-mail correspondence dated January 13, 2003, Mr. Horton submitted a resume to Dr. Rios in response to the posted advertisement. (Ex. 7 to Connelly Cert.).

4.  Mr. Horton's resume revealed the following:

- Under the subheading OBJECTIVE, the resume stated: "I am an Hispanic minority male applicant over the age of 40 years. I have added ethnic and cultural diversity to my employer's work force which have usually been 100% white female which failed to reflect the ethnic (20-30% minority), cultural (20-30% minority) and gender (50% male) diversity existing in the local community and clientele served."

- Throughout his twenty-two (22) year library career, Mr. Horton had only seven (7) months experience working in a Medical Library, from August 1999 through March 2000, as the Director, Medical Resource Center & Library at the 20th Medical Group & Base Hospital.

- During the most recent fifteen years of his work history, Mr. Horton was employed by following employers, but never for a lengthy period of time: US Military Academy at West Point for two (2) months; 20th Medical Group & Base Hospital for seven (7) months; Huron University Library for six (6) months; Society of St. Pius X for ten (10) months; Royal Saudi Naval Forces for two (2) years; and the IRS for nineteen (19) months.

- There were significant periods of unemployment between Mr. Horton's jobs. Between his employment with the 20th Medical Group & Base Hospital and the US Military Academy, twenty seven (27) months; between Huron University Library and the 20th Medical Group & Base Hospital, five (5) months; between the Royal Saudi Naval Forces and the Society of St. Pius X, three and one-half years. No explanation was provided on the resume regarding these significant periods of time out of work.

- Mr. Horton received 65 credits towards a law degree from University of Oklahoma Law School and Oklahoma City University Law School, but did not complete this course of study.

- Mr. Horton's address was listed as "General Delivery, Dupont, WA, 98327-9999."

(Ex. 7 to Connelly Cert.).

5.      During the periods of employment listed on his resume he held various "odd jobs" that were not worth listing on his resume.  (Ex. 2 to Connelly Cert.: Horton T21-7 to 14).

6.      During one three year period he did not seek employment; he simply "just kind of lived in Seattle" off his prior earnings.  (Ex. 2 to Connelly Cert.: Horton T13-14 to 17).

7.      Mr. Horton acknowledged that he did not meet the job requirements for the position of Medical Library Director at Ross University. He testified that he only had seven months experience in a medical library; that he did not have five to eight years of professional experience in an academic research medical school in a library setting, and that he did not have three to five years experience supervising professional librarians or library staff.  (Ex. 2 to Connelly Cert.:  Horton T19-23 to T20-2; T21-6 to 13).

8.      In response to defense counsel's inquiry why he included in his resume a statement indicating that he was a Hispanic male over the age of forty, Plaintiff responded that some companies would like to know that information for EEO purposes. (Ex. 2 to Connelly Cert.: Horton T27-8 to 14).

9.      In response to counsel's observation that Mr. Horton did not look Hispanic, Plaintiff noted that his mother was one-half Mexican, making him one-quarter Hispanic,

which he believed qualified him as a minority. (Ex. 2 to Connelly Cert.: Horton T27-15 to T28-10).

10.     Between January 15 and January 21, 2003, Dr. Rios conducted a telephone interview with Mr. Horton and they exchanged e-mails about making arrangements for Mr. Horton to travel to Dominica for an in-person interview at Ross University. (Ex. 2 to Connelly Cert.: Horton T30-8 to T31-8; Ex. 8 and 9 to Connelly Cert.).

11.     Thereafter, Mr. Horton exchanged several e-mails with Ms. Fried about his travel itinerary and reimbursement by Ross University for his travel expenses. (Ex. 2 to Connelly Cert.: Horton T31-22 to T32-19; Ex. 10 to Connelly Cert.).

12.     Following several telephone conversations with Mr. Horton, Ms. Fried e-mailed Dr. Rios on January 27, 2003 and advised "[a]s we have discussed over the past few days, I have a 'bad feeling' regarding John Horton," adding that Mr. Horton told her that she was not to speak with him on a speaker phone, but rather, had to pick up the phone when speaking to him. He also asked Ms. Fried to communicate with him by e-mail, because he did not have a telephone. Ms. Fried's concerns also prompted her to recommend that Mr. Horton's interview be postponed. Initially, Dr. Rios directed that the interview should proceed. (Ex. 1 to the Accompanying Supporting Certification of Denise Sawitsch ("Sawitsch Cert.")).

13.     That same day, however, Mr. Horton telephoned Ross University's travel agent, Tom Backer, and an itinerary was set with travel to Dominica on February 1, 2003. (Ex. 2 to Sawitsch Cert.).

333136v1

14. Thereafter, Mr. Backer contacted Ms. Fried to relate that Mr. Horton had responded to him in an annoyed and "odd" manner during their discussions about his travel arrangements. Ms. Fried again brought that information to the attention of Dr. Rios. As a result, Dr. Rios agreed to postpone the interview. They then instructed Mr. Backer to cancel Mr. Horton's travel reservations (Ex. 3 to Sawitsch Cert.).

15. When asked about his exchange with Mr. Backer at his deposition, Mr. Horton denied that he ever spoke with Mr. Backer. (Ex. 2 to Connelly Cert.: Horton T48-1 to 8). That testimony is belied by Mr. Horton's January 27, 2003 e-mail to Ms. Fried wherein he confirmed his telephone call with Mr. Backer. (Ex.2 to Sawitsch Cert.: first e-mail entry dated January 27, 2003 from Mr. Horton to Ms. Fried).

16. On or about February 1, 2003, the day before he was to travel, Plaintiff received an e-mail from Ms. Fried indicating that the job interview was postponed due to budgetary constraints at Ross University, and that it would be rescheduled at a future date. (Ex. 11 to Connelly Cert.: Plaintiff's Response No. 7 to Defendants' Initial Interrogatories).

17. Plaintiff maintains that in reliance upon his anticipated interview at Ross University the week of February 1, 2003, he declined an interview for a Library Director position at Renton Technical College in Seattle, Washington that had been scheduled for the same week. In response to e-mail inquiries from Plaintiff, the Human Resources Department of Renton Technical College confirmed that the Library Director position had been posted in December, 2002, that Plaintiff had been selected for an interview, and

333136v1

that Plaintiff had declined the interview and withdrew his application. (Ex. 12 to Connelly Cert.).

18. While that e-mail failed to indicate the date on which Plaintiff withdrew his name from consideration for a position at Renton Technical College, he maintained that this happened at or about the time his interview with Ross University was scheduled. (Ex. 2 to Connelly Cert.: Horton T35-23 to T36-1).

19. Plaintiff made no attempt to reschedule the interview with Renton Technical College because "at the time the Dominica position looked so promising that I was trying to put all my eggs in that basket," and "I felt that the Dominica position was in the bag." (Ex. 2 to Connelly Cert.: Horton T36-4 to 6; T36-23 to 24).

20. Plaintiff acknowledged that Dr. Rios did not offer him the Medical Library Director's position, and further, that Dr. Rios did not have the authority to do so. Nevertheless, Plaintiff canceled the Renton Technical College interview based on an "assumption" that the Ross University position would be offered to him when he arrived in Dominica.  (Ex. 2 to Connelly Cert.: Horton T64-17 to T65-1; T66-15 to 25).

21. In or about January or February of 2003 Plaintiff accepted a position with the Veterans Health Administration Medical Center in Philadelphia, Pennsylvania, but could not recall whether he accepted this position before or after his interview with Ross University was canceled. (Ex. 2 to Connelly Cert.: Horton T37-16 to T38-20).

22. On February 18, 2003, Mr. Horton e-mailed a revised resume to Ross University for the Medical Library Director's position.  That resume indicated Plaintiff was employed by the Veteran's Health Administration since February 2003 as a Library

Technician (Medical). Plaintiff described that position as non-managerial, principally involving the maintenance of medical, patent and administrative journals subscriptions. Plaintiff also listed a new mailing address as "General Delivery, Philadelphia, PA 19104-9999. (Ex. 13 to Connelly Cert.).

23. On April 7, 2003 the Medical Library Director position at Ross University was re-posted on a career opportunities website. (Ex. 2 to Connelly Cert.).

24. On April 9, 2003, Plaintiff e-mailed yet another revised resume to Ross University to Christine Holmberg, Ross University's Vice President of Human Resources. The second revised resume listed Plaintiff's address as "General Delivery, Wrightstown, NJ 08562-9999." Ms. Holmberg reviewed the resume and attached a note to it indicating that Plaintiff did not have sufficient medical library experience, that Plaintiff did not have sufficient managerial experience, and that Plaintiff moved positions too frequently. (Ex. 4 to Sawitsch Cert.).

25. On August 14, 2003, Mr. Horton e-mailed a third revised resume to Ross University and asked, "You all offered me an interview back in February and I am still waiting? What's going on?" The third, revised resume indicated that Mr. Horton had been employed with the Veteran's Health Administration Medical Center in Philadelphia from March, 2003 through June, 2003 – a mere three (3) months. It also listed a new mailing address as "General Delivery, Jobstown, NJ 08401-9999." (Ex. 14 to Connelly Cert.).

26. Plaintiff followed up with an e-mail dated August 18, 2003 to Ross University asking for Dr. Rios' personal e-mail address. (Ex. 5 to Sawitsch Cert.).

333136v1

27.     On August 19, 2003, Plaintiff appeared at the offices of Dominica Management and Ross University in Edison, New Jersey and again asked for Dr. Rios' e-mail address. After receiving that e-mail address, Plaintiff began yelling at the receptionist about not being considered for the Medical Library Director's position even though the position was still posted as unfilled on the Internet.   After berating the receptionist, Plaintiff finally left the office.  The receptionist was visibly shaken by Plaintiff's abusive behavior (¶3 of Sawitsch Cert.).

28.     As a result, Denise Sawitsch, Ross University's Director of Human Resources, e-mailed Dr. Rios to advise of the incident and recommend that he have no further contact with Plaintiff.  (Ex. 6 to Sawitsch Cert.).

29.     Thereafter, Ms. Sawitsch e-mailed an account of the incident to Ms. Holmberg. (¶ 5 of Sawitsch Cert.; Ex. 7 to Sawitsch Cert.).

30.     By e-mail correspondence dated August 20, 2003 to Dr. Rios, Plaintiff again inquired about the vacant Medical Library Director's position.  He closed his letter with the following comment, "I visited your office is [sic] Edison, New Jersey yesterday.  I was told that the Human Resources *lady* makes all the hiring decisions. *Is your job in this process to do all the work of interviewing and selecting candidates and then this lady gets to shoot all your selections down?"*  (Ex. 8 to Sawitsch Cert.) (emphasis added).

31.     As a result of that e-mail correspondence, Ross University began to question Plaintiff's mental stability, and Ms. Holmberg prepared a letter dated August 25, 2003 again advising Plaintiff that he was not being considered for the Medical Library Director's position.  (Ex. 9 to Sawitsch Cert.).

32. Before the letter could be sent, however, Plaintiff returned a second time to the Edison offices of Dominica Management/ Ross University demanding to speak with Ms. Holmberg. When Plaintiff was advised that she was not in, he started yelling at the receptionist and refused to leave without first speaking with Ms. Holmberg. The receptionist called Ms. Sawitsch to intervene in the situation. Ms. Sawitsch asked Plaintiff to leave the premises and advised that if he failed to do so, the police would be called. Finally, Plaintiff left the premises. (¶5 of Sawitsch Cert.).

33. As a result of that incident, a second letter was drafted and sent to Plaintiff advising him to cease all communications with Ross University or face trespassing charges. (Ex. 10 to Sawitsch Cert; ¶5 of Sawitsch Cert.).

34. Plaintiff acknowledged that when he appeared at the Edison offices he did not identify himself as Hispanic, that there was no security presence at the Edison offices, and that the staff at the office simply threatened to call the local police. He stated, however, that the "implication" was that he was going to be lynched. (Ex. 2 to Connelly Cert.: Horton T58-23 to T59-20).

35. On January 10, 2004, Ross University hired Marilyn B. Sullivan for the position of Medical Library Director. (¶7 to Sawitsch Cert.).

36. At the time of her hire, Ms. Sullivan had 25 years of experience as a medical librarian, a medical library consultant, a medical library journalist, and a library educator. A review of the Ms. Sullivan's resume also indicates that she had extensive experience in the field of medical library science, including a position as the "Chief, Health Sciences

Libraries" at the University of Missouri-Kansas City from 1983 through 1997. (Ex. 11 to Sawitsch Cert.).

37.     Ms. Sullivan was 73 years of age at the time she was hired by Ross University (Ex. 12 to Sawitsch Cert.).

38.     Aside from the fact that his interview with Ross University was canceled, Mr. Horton did not have any other facts to substantiate his claim that he was not interviewed because of his age or because he is Hispanic.  (Ex. 2 to Connelly Cert.: Horton T60-24 to T61-16).

>LINDABURY McCORMICK & ESTABROOK
>Attorneys for Defendants
>Ross University School of Medicine, Dr. Jorge Rios
>and Michelle Fried
>
>
>*S/John H. Schmidt, Jr.*_____
>JOHN H. SCHMIDT, JR.

Dated:  August 15, 2005

333136v1