**LINDABURY, MCCORMICK & ESTABROOK**
**53 Cardinal Drive**
**P.O. Box 2369**
**Westfield, N.J. 07091**
**(908) 233-6800**
**Attorneys For Defendants**
**JHS-1451**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN HORTON | : CIVIL ACTION NO.:04-5658 (JAG) |
| Plaintiff, | : |
| -vs- | : |
| ROSS UNIVERSITY SCHOOL OF MEDICINE, et al | : |
| Defendants | : |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

LINDABURY, McCORMICK & ESTABROOK
53 Cardinal Drive
P.O. Box 2369
Westfield, New Jersey 07091
(908) 233-6800
Attorneys for Defendants

Of Counsel:  John H. Schmidt, Jr., Esq.
On the Brief:  Kathleen M. Connelly, Esq.

327500v2

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

STATEMENT OF FACTS ...........................................................................................................1

POINT I
SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF
DEFENDANTS BECAUSE PLAINTIFF CANNOT ESTABLISH A
*PRIMA FACIE* CASE OF AGE OR RACE DISCRIMINATION ..............................................10

POINT II
PLAINTIFF CANNOT ESTABLISH THAT HIS RACE AND/OR
AGE WERE A FACTOR IN THE DECISION TO CANCEL HIS
JOB INTERVIEW AND REMOVE HIM FROM CONSIDERATION
AS A CANDIDATE FOR THE MEDICAL LIBRARY DIRECTOR
POSITION....................................................................................................................... 14

POINT III
PLAINTIFF'S   UCC,   BREACH   OF   CONTRACT,   FRAUDULENT
CONCEALMENT AND FRAUDULENT INDUCEMENT CLAIMS SHOULD
BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF
CAN BE GRANTED ...................................................................................................................17

POINT IV
PLAINTIFF'S   TORTIOUS   INTERFERENCE   CLAIM   CANNOT   LIE
AGAINST   MICHELLE   FRIED   SHOULD   BE   DISMISSED   BY   THIS
COURT .....................................................................................................................................20

CONCLUSION...........................................................................................................................21

327500v2

# TABLE OF AUTHORITIES

## Cases

*Bennun v. Rutgers*, 941 F.2d 154 (3rd Cir. 1991), *cert. den.*, 502 U.S. 1066 (1992) .................... 10

*Carney v. Dexter Shoe Co.*, 701 F.Supp. 1093, 1103 (D.N.J. 1988) ........................................... 18

*Davis v. Rutgers Cas. Ins. Co.*, 964 F.Supp. 560 (D.N.J. 1977).................................................. 15

*Ditze, v U.M.D.N.J.*, 962 F.Supp. 595 (D.N.J. 1997) ................................................................. 15

*Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163 (3rd Cir. 2001) ................................................. 11

*Fregara v. Jet Aviation Business Jets*, 764 F.Supp. 940 (D.N.J. 1991)........................................ 20

*Fuentes v. Perskie*, 32 F.3d 759 (3rd Cir. 1994)........................................................................ 15

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) ..................................................................... 14

*Jason v. Showboat Hotel & Casino*, 329 N.J.Super. 295, 307 (App. Div. 2000)
  (citations omitted) .................................................................................................................. 15

*Keller v. Oryx Credit Alliance, Inc.*, 130 F.3rd 1101 (3rd Cir. 1997)........................................... 14

*Martinex v. Hazlton Research Animals, Inc.*, 430 F.Supp.186 (D.Md. 1977)............................... 11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ......................................................... 10

*Monaco v. American Gen'l Ins. Co.*, 359 F.3d 296, 303-04 (3rd Cir. 2004)..................... 11, 13, 14

*Muench v. Twnsp. of Haddon*, 255 N.J.Super. 288 (App. Div. 1992) ......................................... 20

*Oscar v. Simeonidis*, 352 N.J.Super. 476 (App. Div. 2002) ...................................................... 17

*Panzio v. Scott Paper Co.*, 685 F.Supp. 458 (D.N.J. 1988)...................................................... 18

*Peper v. Princeton University Board of Trustees*, 77 N.J. 55 (1978)........................................... 10

*Printing Mart - Morristown v. Sharp Electronics Corp.*, 116 N.J. 739 (1989) ............................ 20

*Sandler v. Lawn-A-Mat Chemical and Equipment Corp.*, 141 N.J.Super. 437
  (App. Div. 1976), *certif. denied*, 71 N.J. 503(1976)................................................................ 20

*Seaview Orthopedics v. Nat'l Healthcare Resources, Inc.*, 366 N.J.Super.
  501 (App.Div. 2004)............................................................................................................... 17

*Shebar v. Sanyo Bus. Syst. Corp.*, 218 N.J.Super. 242 (App. Div.), *aff'd*, 111 N.J. 276
  (1988)..................................................................................................................................... 18

*Swider v. Ha- Lo Ind., Inc.* 134 F.Supp.2d 607 (D.N.J. 2001) .................................................. 18

## Statutes

*N.J.S.A.* 12A:1-1 *et seq* ........................................................................................................... 17

## STATEMENT OF FACTS

*Pro se* plaintiff John D. Horton ("Plaintiff" or "Mr. Horton") brings this action against Ross University School of Medicine ("Ross University"), Dr. Jorge Rios, its Dean of Academic Affairs, and Michelle Fried, its Alumni/Travel Coordinator, alleging race and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000e, and the Age Discrimination in Employment Act ("ADEA"), 29 *U.S.C.* § 629. in connection with his application for employment with Ross University. In addition, Plaintiff alleges violations of the Uniform Commercial Code of the State of New Jersey, breach of contract, fraudulent concealment, fraudulent inducement and tortuous interference with contract. (Ex. 1 to the Accompanying Supporting Certification of Kathleen M. Connelly ("Connelly Cert.")).[1]

Ross University is a foreign corporation located in and organized under the laws of Dominica, West Indies. Dominica Management, Inc. is a New York corporation that provides the university with various management and support services out of offices located in Edison, New Jersey. Dominica Management does not, however, "control" the university's operations as that term is defined under 42 U.S.C. Sec. 2000e-1.

In January 2003, Ross University advertised for the position of Medical Library Director for its medical school located in Dominica. As its posted advertisement indicated, Ross

---

[1]    Plaintiff is no stranger to the federal courts. At his deposition Plaintiff attested to the fact that he has filed a number of legal actions against various government agencies and private employers and that the matters were identifiable through Westlaw. (Ex. 2 to Connelly Cert.: Horton T49-2 to 4). The Westlaw search shows that Mr. Horton has filed at least 36 lawsuits, principally alleging civil rights violations, against various entities such as the Merit Systems Protection Board, the U.S. Office of Personnel, the United States, the Department of the Air Force, and Huron University, among others. (Ex. 3 and 4 to Connelly Cert.). Plaintiff acknowledged that he did not collect any money damages in connection with these actions. (Ex. 2 to Connelly Cert.: Horton T50-2 to T51-19). The Westlaw search also identified Plaintiff as a criminal defendant in at least one federal proceeding. (Ex. 5 to Connelly Cert.)

327500v2

University was seeking to hire a Medical Library Director who, among other things, had a masters degree in library sciences, had five (5) to eight (8) years experience in an academic research or medical school library setting, had three (3) to five (5) years experience in supervising professional librarians, and had experience with current information services in academic medicine. (Ex. 6 to Connelly Cert.)[2].

By e-mail correspondence dated January 13, 2003, Mr. Horton submitted a resume to Dr. Rios in response to the posted advertisement. (Ex. 7 to Connelly Cert.). Mr. Horton's resume revealed the following:

- Under the subheading OBJECTIVE, the resume stated: "I am an Hispanic minority male applicant over the age of 40 years. I have added ethnic and cultural diversity to my employer's work force which have usually been 100% white female which failed to reflect the ethnic (20-30% minority), cultural (20-30% minority) and gender (50% male) diversity existing in the local community and clientele served."

- Throughout his twenty-two (22) year library career, Mr. Horton had only seven (7) months experience working in a Medical Library, from August 1999 through March 2000, as the Director, Medical Resource Center & Library at the 20th Medical Group & Base Hospital.

- During the most recent fifteen years of his work history, Mr. Horton was employed by following employers, but never for a lengthy period of time: US Military Academy at West Point for two (2) months; 20th Medical Group & Base Hospital for seven (7) months; Huron University Library for six (6) months; Society of St. Pius X for ten (10) months; Royal Saudi Naval Forces for two (2) years; and the IRS for nineteen (19) months.

- There were significant periods of unemployment between Mr. Horton's jobs. Between his employment with the 20th Medical Group & Base Hospital and the US Military Academy, twenty seven (27) months; between Huron University Library and the 20th Medical Group & Base Hospital, five (5) months; between the Royal Saudi Naval Forces and the Society of St. Pius X, three and one-half

---

[2] Although this posted advertisement for the Library Director position is dated April 7, 2003, Mr. Horton testified that this description of the position was the same as the posting he saw in January 2003 that prompted him to e-mail his resume to Ross University on January 13, 2003. (Ex. 2 to Connelly Cert.: Horton T20-7 to T21-2).

327500v2

years.  No explanation was provided on the resume regarding these significant periods of time out of work.

- Mr. Horton received 65 credits towards a law degree from University of Oklahoma Law School and Oklahoma City University Law School, but did not complete this course of study.

- Mr. Horton's address was listed as "General Delivery, Dupont, WA, 98327-9999."

During his deposition, Mr. Horton testified that during the periods of employment listed on his resume he held various "odd jobs" that were not worth listing on his resume. (Ex. 2 to Connelly Cert.: Horton T21-7 to 14).  Mr. Horton also indicated that during one three year period he did not seek employment; he simply "just kind of lived in Seattle" off his prior earnings. (Horton T13-14 to 17).

During his deposition, Mr. Horton acknowledged that he did not meet the job requirements for the position of Medical Library Director at Ross University. He testified that he only had seven months experience in a medical library; that he did not have five to eight years of professional experience in an academic research medical school in a library setting, and that he did not have three to five years experience supervising professional librarians or library staff. (Ex. 2 to Connelly Cert.:  Horton T19-23 to T20-2; T21-6 to 13).

In response to defense counsel's inquiry why he included in his resume a statement indicating that he was a Hispanic male over the age of forty, Plaintiff responded that some companies would like to know that information for EEO purposes. ( Ex. 2 to Connelly Cert.: Horton T27-8 to 14).  In response to counsel's observation that Mr. Horton did not look Hispanic, Plaintiff noted that his mother was one-half Mexican, making him one-quarter

3

Hispanic, which he believed qualified him as a minority. (Ex. 2 to Connelly Cert.: Horton T27-15 to T28-10).

Between January 15 and January 21, 2003, Dr. Rios conducted a telephone interview with Mr. Horton and they exchanged e-mails about making arrangements for Mr. Horton to travel to Dominica for an in-person interview at Ross University. (Ex. 2 to Connelly Cert.: Horton T30-8 to T31-8; Ex. 8 and 9 to Connelly Cert.). Thereafter, Mr. Horton exchanged several e-mails with Ms. Fried about his travel itinerary and reimbursement by Ross University for his travel expenses. (Ex. 2 to Connelly Cert.: Horton T31-22 to T32-19; Ex. 10 to Connelly Cert.).

Following several telephone conversations with Mr. Horton, Ms. Fried e-mailed Dr. Rios on January 27, 2003 and advised "[a]s we have discussed over the past few days, I have a 'bad feeling' regarding John Horton," adding that Mr. Horton told her that she was not to speak with him on a speaker phone, but rather, had to pick up the phone when speaking to him. He also asked Ms. Fried to communicate with him by e-mail, because he did not have a telephone. Ms. Fried's concerns also prompted her to recommend that Mr. Horton's interview be postponed. Initially, Dr. Rios directed that the interview should proceed. (Ex. 1 to the Accompanying Supporting Certification of Denise Sawitsch ("Sawitsch Cert.")).

That same day, however, Mr. Horton telephoned Ross University's travel agent, Tom Backer, and an itinerary was set with travel to Dominica on February 1, 2003. (Ex. 2 to Sawitsch Cert.). Thereafter, Mr. Backer contacted Ms. Fried to relate that Mr. Horton had responded to him in an annoyed and "odd" manner during their discussions about his travel arrangements.

4

Ms. Fried again brought that information to the attention of Dr. Rios. As a result, Dr. Rios agreed to postpone the interview. They then instructed Mr. Backer to cancel Mr. Horton's travel reservations (Ex. 3 to Sawitsch Cert.). When asked about his exchange with Mr. Backer at his deposition, Mr. Horton denied that he ever spoke with Mr. Backer. (Ex. 2 to Connelly Cert.: Horton T48-1 to 8). That testimony is belied by Mr. Horton's January 27, 2003 e-mail to Ms. Fried wherein he confirmed his telephone call with Mr. Backer. (Ex.2 to Sawitsch Cert.: first e-mail entry dated January 27, 2003 from Mr. Horton to Ms. Fried).

On or about February 1, 2003, the day before he was to travel, Plaintiff received an e-mail from Ms. Fried indicating that the job interview was postponed due to budgetary constraints at Ross University, and that it would be rescheduled at a future date. (Ex. 11 to Connelly Cert.: Plaintiff's Response No. 7 to Defendants' Initial Interrogatories).

In this litigation, Plaintiff maintains that in reliance upon his anticipated interview at Ross University the week of February 1, 2003, he declined an interview for a Library Director position at Renton Technical College in Seattle, Washington that had been scheduled for the same week. In response to e-mail inquiries from Plaintiff, the Human Resources Department of Renton Technical College confirmed that the Library Director position had been posted in December, 2002, that Plaintiff had been selected for an interview, and that Plaintiff had declined the interview and withdrew his application. (Ex. 12 to Connelly Cert.). While that e-mail failed to indicate the date on which Plaintiff withdrew his name from consideration for a position at Renton Technical College, he maintained that this happened at or about the time his interview with Ross University was scheduled. (Ex. 2 to Connelly Cert.: Horton T35-23 to T36-1). Plaintiff acknowledged that he made no attempt to reschedule the interview with Renton

5

Technical College because "at the time the Dominica position looked so promising that I was trying to put all my eggs in that basket," and "I felt that the Dominica position was in the bag." (Ex. 2 to Connelly Cert.: Horton T36-4 to 6; T36-23 to 24). However, Plaintiff acknowledged that Dr. Rios did not offer him the Medical Library Director's position, and further, that Dr. Rios did not have the authority to do so. Nevertheless, Plaintiff canceled the Renton Technical College interview based on an "assumption" that the Ross University position would be offered to him when he arrived in Dominica. (Ex. 2 to Connelly Cert.: Horton T64-17 to T65-1; T66-15 to 25).

Plaintiff also acknowledged that in or about January or February of 2003 he accepted a position with the Veterans Health Administration Medical Center in Philadelphia, Pennsylvania, but could not recall whether he accepted this position before or after his interview with Ross University was canceled. (Ex. 2 to Connelly Cert.: Horton T37-16 to T38-20). Indeed, on February 18, 2003, Mr. Horton e-mailed a revised resume to Ross University for the Medical Library Director's position. That resume indicated Plaintiff was employed by the Veteran's Health Administration since February 2003 as a Library Technician (Medical). Plaintiff described that position as non-managerial, principally involving the maintenance of medical, patent and administrative journals subscriptions. Plaintiff also listed a new mailing address as "General Delivery, Philadelphia, PA 19104-9999. (Ex. 13 to Connelly Cert.).

On April 7, 2003 the Medical Library Director position at Ross University was re-posted on a career opportunities website. (Ex. 2 to Connelly Cert.). On April 9, 2003, Plaintiff e-mailed yet another revised resume to Ross University; this time the resume was sent to Christine Holmberg, Ross University's Vice President of Human Resources. The second revised resume

6

listed Plaintiff's address as "General Delivery, Wrightstown, NJ 08562-9999." Ms. Holmberg reviewed the resume and attached a note to it indicating that Plaintiff did not have sufficient medical library experience, that Plaintiff did not have sufficient managerial experience, and that Plaintiff moved positions too frequently. (Ex. 4 to Sawitsch Cert.).

On August 14, 2003, Mr. Horton e-mailed a third revised resume to Ross University and asked, "You all offered me an interview back in February and I am still waiting? What's going on?" The third, revised resume indicated that Mr. Horton had been employed with the Veteran's Health Administration Medical Center in Philadelphia from March, 2003 through June, 2003 – a mere three (3) months. It also listed a new mailing address as "General Delivery, Jobstown, NJ 08401-9999." (Ex. 14 to Connelly Cert.). Plaintiff followed up with an e-mail dated August 18, 2003 to Ross University asking for Dr. Rios' personal e-mail address. (Ex. 5 to Sawitsch Cert.).

On August 19, 2003, Plaintiff appeared at the offices of Dominica Management and Ross University in Edison, New Jersey and again asked for Dr. Rios' e-mail address. After receiving that e-mail address, Plaintiff began yelling at the receptionist about not being considered for the Medical Library Director's position even though the position was still posted as unfilled on the Internet. After berating the receptionist, Plaintiff finally left the office. The receptionist was visibly shaken by Plaintiff's abusive behavior (¶3 of Sawitsch Cert.) As a result, Denise Sawitsch, Ross University's Director of Human Resources, e-mailed Dr. Rios to advise of the incident and recommend that he have no further contact with Plaintiff. (Ex. 6 to Sawitsch Cert.). Thereafter, Ms. Sawitsch e-mailed an account of the incident to Ms. Holmberg. (¶ 5 of Sawitsch Cert.; Ex. 7 to Sawitsch Cert.).

7

By e-mail correspondence dated August 20, 2003 to Dr. Rios, Plaintiff again inquired about the vacant Medical Library Director's position. He closed his letter with the following comment, "I visited your office is [sic] Edison, New Jersey yesterday. I was told that the Human Resources *lady* makes all the hiring decisions. *Is your job in this process to do all the work of interviewing and selecting candidates and then this lady gets to shoot all your selections down?"* (Ex. 8 to Sawitsch Cert.) (emphasis added). As a result of that e-mail correspondence, Ross University began to question Plaintiff's mental stability, and Ms. Holmberg prepared a letter dated August 25, 2003 again advising Plaintiff that he was not being considered for the Medical Library Director's position. (Ex. 9 to Sawitsch Cert.). Before the letter could be sent, however, Plaintiff returned a second time to the Edison offices of Dominica Management/ Ross University demanding to speak with Ms. Holmberg. When Plaintiff was advised that she was not in, he started yelling at the receptionist and refused to leave without first speaking with Ms. Holmberg. The receptionist called Ms. Sawitsch to intervene in the situation. Ms. Sawitsch asked Plaintiff to leave the premises and advised that if he failed to do so, the police would be called. Finally, Plaintiff left the premises. (¶5 of Sawitsch Cert.). As a result of that incident, a second letter was drafted and sent to Plaintiff advising him to cease all communications with Ross University or face trespassing charges. (Ex. 10 to Sawitsch Cert; ¶5 of Sawitsch Cert.).

In the Complaint filed in this matter, Plaintiff alleges that "because he was a Hispanic male over the age of 40 [he] was threatened with being lynched by the defendant Gestapo Security if he did not stop bothering the three white females at defendant's offices. . .". (Ex. 1 to Connelly Cert.: Complaint, ¶6). At his deposition, Plaintiff acknowledged that when he appeared at the Edison offices he did not identify himself as Hispanic, that there was no security presence

8

at the Edison offices, and that the staff at the office simply threatened to call the local police. He stated, however, that the "implication" was that he was going to be lynched. (Ex. 2 to Connelly Cert.: Horton T58-23 to T59-20).

On January 10, 2004, Ross University hired Marilyn B. Sullivan for the position of Medical Library Director. (¶7 to Sawitsch Cert.). At the time of her hire, Ms. Sullivan had 25 years of experience as a medical librarian, a medical library consultant, a medical library journalist, and a library educator. A review of the Ms. Sullivan's resume also indicates that she had extensive experience in the field of medical library science, including a position as the "Chief, Health Sciences Libraries" at the University of Missouri-Kansas City from 1983 through 1997. (Ex. 11 to Sawitsch Cert.). Ms. Sullivan was 73 years of age at the time she was hired by Ross University (Ex. 12 to Sawitsch Cert.).

At his deposition Mr. Horton testified that aside from the fact that his interview with Ross University was canceled, he did not have any other facts to substantiate his claim that he was not interviewed because of his age or because he is Hispanic. (Ex. 2 to Connelly Cert.: Horton T60-24 to T61-16).

9

## POINT I
### SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEFENDANTS BECAUSE PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF AGE OR RACE DISCRIMINATION

Plaintiff claims that Ross University treated him differently than other candidates for the Medical Library Director position because of his age (over 40 years), and because of his race (Hispanic) in violation of Title VII and the ADEA. As set forth more fully below, the defendants submit that they are entitled to summary judgment on Plaintiff's discrimination claims because he was clearly not qualified for that position.

In order for Plaintiff to establish a *prima facie* case of age or ethnicity discrimination in a refusal to hire situation, he is required to show that (1) he was a member of a protected class; (2) that he applied and *was qualified for the position*; (3) that he was rejected *despite having adequate qualifications*; and (4) after rejection the position remained open and *the employer continued to seek applicants for persons of plaintiff's qualifications. McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (emphasis added). In making a determination whether someone was qualified for a position, the courts will look to job experience in the position, education, and quality of work performed in the past. *Peper v. Princeton University Board of Trustees*, 77 N.J. 55 (1978). The courts will then attempt to compare the qualifications of the alleged victim of discrimination to the individual who was awarded the position. *Bennun v. Rutgers*, 941 F.2d 154 (3rd Cir. 1991), *cert. den.*, 502 U.S. 1066 (1992).

In addition to the foregoing, in age discrimination cases the alleged victim of discrimination must establish that the favored employee - the employee who was ultimately hired for the position - was outside of the protect class and/or was "sufficiently younger" than the

10

327500v2

victim of discrimination. *Monaco v. American Gen'l Ins. Co.,* 359 F.3d 296, 303-04 (3rd Cir. 2004); *Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167 (3rd Cir. 2001).

**A.**

**As concerns Plaintiff's Race Discrimination Claim, He Cannot Establish The First Element of A *Prima Facie* Case - That He Is A Member of The Protected Class**

In this action, Plaintiff seeks the protection of Title VII's discrimination prohibitions because he is ¼ Hispanic. However, in cases under federal anti-discrimination laws, a mere allegation that the plaintiff is "Hispanic," without more, is insufficient to support a race discrimination claim. *Martinex v. Hazlton Research Animals, Inc.,* 430 F.Supp. 186, 187-88 (D.Md. 1977). Many people of Hispanic origin cannot be classified as "non-whites." As astutely observed by the court in *Martinez, supra,* "[w]hile it might be true that Hispanic individuals may suffer discrimination closely akin to that experienced by the black race, it is not necessarily true of all Hispanic people. . . " *Id.*

Plaintiff herein stands on the same footing as the *Martinez* plaintiff. Although Plaintiff alleges he is ¼ Hispanic, he offers no other proofs that this minimal heritage qualifies him as "non-white." A mere allegation that Plaintiff has some Hispanic heritage is insufficient to sustain a race claim under Title VII.

**B.**

**Whereas Plaintiff's Resume Clearly Shows That He Did Not Meet the Requisite Qualifications For The Medical Library Director Position, He Cannot Satisfy the Second Prong of a *Prima Facie* Discrimination Claim**

As reflected in its posting for the position of Medical Library Director, Ross University sought a candidate with a Masters Degree in Library Science, at least five (5) years experience in a Medical Library, and at least three (3) years experience in a managerial position supervising library staff. As evidenced on the face of Plaintiff's resume, he cannot satisfy two of those qualifications. Although Plaintiff alleged he had a Master's Degree in library science, as of January, 2003 (the day he submitted his first resume), he had a mere seven (7) months work

327500v2

11

experience in a medical library with the 20th Medical Group & Base Hospital. None of the other numerous employment positions listed in his lengthy resume were in a medical library setting. Thus, it cannot be disputed that Plaintiff did not satisfy the second qualification for the Library Medical Director position.

Moreover, Plaintiff held a director position with the 20th Medical Group & Base Hospital for only seven (7) months, and served as the Interim Library Director at Huron University for a mere six (6) months, for a total of thirteen (13) months of library management experience. Thus, Plaintiff was 23 months short of the minimum library management experience sought by Ross University for its Medical Library Director position. In fact, none of the other positions listed in Plaintiff's resume were in a library management capacity.

In February, April, and again in August of 2003, Plaintiff submitted revised resumes to Ross University that further confirmed his lack of qualifications for the position. The revised resumes indicate that Plaintiff worked at the Veteran's Health Administration Medical Center for four (4) months in a technician's position, giving him a total of ten (10) months of library experience, still four years and two months shy of the experience sought by Ross University. Moreover, that employment was not in a managerial position and thus did not cure his lack of library management experience.

Based upon the foregoing, it cannot be reasonably disputed that Plaintiff did not meet the qualifications established by Ross University for the position of Medical Library Director. As such, Plaintiff cannot satisfy the second element of a *prima facie* race or age discrimination claim - that he applied and was qualified for the Medical Library Director position.

12

**C.**

**Whereas Plaintiff Cannot Establish That Ross University Continued to Seek Applicants with Qualifications Comparable to His, He Cannot Satisfy the Fourth Prong of a *Prima Facie* Discrimination Claim**

In contrast with the lack of qualifications demonstrated by Plaintiff, Marilyn Sullivan, the individual ultimately hired into the Medical Library Director position, was well qualified for the position. As her resume demonstrates, Ms. Sullivan had a Masters Degree in Library Science as well as 25 years of medical library experience, nearly 15 of those years serving in a management capacity. In addition, Ms. Sullivan had many years of experience writing and editing medical literature. Mr. Horton simply cannot establish that he was as equally qualified as Marilyn Sullivan.

Clearly, Ross University did not continue to seek applicants with the lack of requisite qualifications as Plaintiff, and he cannot offer any proofs to establish otherwise. Plaintiff simply cannot meet the forth prong of a *prima facie* discrimination claim.

**D.**

**Plaintiff Cannot Establish the Modified Fourth Prong of a *Prima Facie* Age Case – That The Position Was Filled by Someone Sufficiently Younger**

In addition to the foregoing, Plaintiff's age claim must be dismissed for yet another reason. Ms. Sullivan, the individual who was ultimately hired for the Medical Library Director position, was 73 years old at the date of her hire. Whereas the position was not filled by someone "sufficiently younger," and in fact, was filled by someone significantly older than Plaintiff, he cannot meet the fourth element of his *prima facie* age claim as a matter of law. *Monaco v. American Gen./Ins. Co., supra*, 359 F.3d at 303-04.

13

327500v2

## POINT II
## PLAINTIFF CANNOT ESTABLISH THAT HIS RACE AND/OR AGE WERE A FACTOR IN THE DECISION TO CANCEL HIS JOB INTERVIEW AND REMOVE HIM FROM CONSIDERATION AS A CANDIDATE FOR THE MEDICAL LIBRARY DIRECTOR POSITION

Assuming *arguendo* that Plaintiff can establish a *prima facie* case of discrimination, liability for unlawful discrimination ultimately depends on whether he can show that his age and/or race "actually motivated the employer's decision" not to interview him for the Medical Library Director opening. *Hazen Paper Co. v. Biggins,* 507 U.S. 604 (1993); *Monaco, supra,* 359 F.3d at 300; *Keller v. Oryx Credit Alliance, Inc.,* 130 F.3rd 1101 (3rd Cir. 1997). Plaintiff cannot present this Court with any evidence that those unlawful motives played any role in Ross University's decision to not interview him for the Medical Library Director's position.

As set forth more fully above and not repeated herein, Plaintiff's resume demonstrated that he did not satisfy several of the stated qualifications for the position. Moreover, Plaintiff's checkered resume demonstrated that he was unable to hold a job for any extended period of time. In fact, Plaintiff's initial resume listed eight (8) positions in a fourteen (14) year period of time, with the longest period of employment with any employer being a mere two (2) years. Five (5) of Plaintiff's employments were for less than one year. Plaintiff's resume further demonstrates frequent, lengthy and unexplained gaps in employment. As reflected in the notes prepared by Ms. Holmberg after her review of Plaintiff's resume, Plaintiff was not considered for the position because he did not possess enough medical lab or management experience and had changed positions too frequently.

14

In addition, as reflected in the e-mail communications between the representatives of Ross University, Mr. Horton's behavior and the manner in which he communicated with Ross University caused it to consider him "odd;" it had a "bad feeling about him," and it ultimately had to demand that he not return to its offices because of his disruptive behavior at its Edison, New Jersey offices.

Finally, at his deposition Mr. Horton conceded that aside from the fact that he is Hispanic and over age 40, he has no additional evidence to support his contention that his rejection for the position at Ross University was due to his race or age. Courts routinely grant summary judgment to employers where plaintiffs fail to support their speculative, unsupported contentions that the employer was motivated by a discriminatory intent. *Ditze, v U.M.D.N.J.*, 962 F.Supp. 595, 606 (D.N.J. 1997) (summary judgment granted where proofs consisted of nothing more than plaintiff's vague perception that his supervisor became cool towards him after he disclosed his medical condition); *Fuentes v. Perskie,* 32 F.3d 759 (3rd Cir. 1994). "An 'inference of discrimination' does not arise anytime a single member of a non-protected group was allegedly treated more favorably than one member of the protected group, regardless of how many other members of the non-protected group were treated equally or less favorably." *Jason v. Showboat Hotel & Casino,* 329 N.J.Super. 295, 307 (App. Div. 2000) (citations omitted). An employer's "business judgment of highly subjective criteria, exercised in good faith, will not be second-guessed in the absence of some evidence of impermissible motives." *Davis v. Rutgers Cas. Ins. Co.,* 964 F.Supp. 560, 573 (D.N.J. 1977).

Based upon the foregoing, defendants respectfully submit that Plaintiff's age and race discrimination claims should be dismissed because he cannot meet his ultimate burden to show

15

Ross University's decision to cancel his job interview was motivated by an impermissible race or age animus.

16

## POINT III

### PLAINTIFF'S UCC, BREACH OF CONTRACT, FRAUDULENT CONCEALMENT AND FRAUDULENT INDUCEMENT CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Plaintiff's Complaint alleges that Ross University's decision to cancel his interview constitutes a breach of "common law, statutes and [sic] Uniform Commercial Code of New Jersey."

New Jersey's Uniform Commercial Code ("U.C.C."), *N.J.S.A.* 12A:1-1 *et seq.,* governs commercial transactions such as the sale of goods, commercial paper, secured transactions, etc. Whereas no commercial transaction is implicated in this failure to hire case, Plaintiff's breach of contract claim is not cognizable under the U.C.C.

It is a fundamental principle of contract law that contracts are not enforceable absent mutual considerations by the parties. *Seaview Orthopedics v. Nat'l Healthcare Resources, Inc.,* 366 N.J.Super. 501 (App.Div. 2004). "Consideration" may be based upon either a detriment incurred by the promisee or a benefit received by the promisor. *Id.* at 503. Nevertheless, no contract is enforceable absent the "flow of consideration;" both parties must "get something" out of the exchange. *Oscar v. Simeonidis,* 352 N.J.Super. 476 (App. Div. 2002).

Plaintiff's contract claim fails on two counts. First, Ross University did not receive any consideration from him – Ross University did not get the benefit of a personal interview, nor did it make any request that Plaintiff forbear other job opportunities so that it could reap the benefit of his continued availability. Nor can Plaintiff show any actionable detrimental reliance – his travel arrangements were canceled before he actually traveled or incurred any travel-related expenses.

17

Plaintiff's assertion that he canceled an interview with another potential employer because 1) it was allegedly scheduled for the same week he was to travel to Dominica, and 2) he "assumed" that a job offer from Ross University "was in the bag" are insufficient as a matter of law. *See, e.g., Panzio v. Scott Paper Co.,* 685 F.Supp. 458, 461-62 (D.N.J. 1988) (testimony that plaintiff would have sought work elsewhere had he known he was going to lose his job, or that there was a "possibility" that he would have been hired into a new job earlier insufficient to establish detrimental reliance claim). Moreover, oral representations of employment, which lack specificity or definiteness, are routinely rejected as nothing more than non-actionable "friendly assurances" of an employer. *Carney v. Dexter Shoe Co.,* 701 F.Supp. 1093, 1103 (D.N.J. 1988). Finally, whereas Plaintiff did not make Ross University aware of his intention to cancel an interview with another employer, his detrimental reliance claim cannot be sustained. *Swider v. Ha- Lo Ind., Inc.* 134 F.Supp.2d 607, 620 (D.N.J. 2001) (plaintiff's detrimental reliance in turning down another job offer was inadequate to support his claim because he did not make the defendant aware of the offer or his decision to turn down the offer in favor of a position with the defendant).

As concerns the fraud claims, Plaintiff must prove that he *reasonably* relied upon a representation by the defendant to his detriment. *Shebar v. Sanyo Bus. Syst. Corp.,* 218 N.J.Super. 242, 251 (App. Div.), *aff'd,* 111 N.J. 276 (1988). Plaintiff's action in canceling an interview with a potential employer based upon his "assumption" that he would get a job offer from Ross University was clearly unreasonable. Plaintiff admitted that Dr. Rios did not make a job offer, and moreover, lacked the authority to do so. Plaintiff simply had no reasonable basis

18

327500v2

to conclude that the position with Ross University was "in the bag" and he   should not be permitted to pursue a claim against Ross University for his own imprudent actions.

Based upon the foregoing, the defendants are entitled to summary judgment on Plaintiff's U.C.C., contract and fraud claims.

19

**POINT IV**

**PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM CANNOT LIE AGAINST MICHELLE FRIED SHOULD BE DISMISSED BY THIS COURT.**

In ¶11 of his Complaint Plaintiff maintains that defendant Michelle Fried tortuously interfered with his contractual and business relationship with Ross University. Whereas Plaintiff had no contractual relationship with Ross University, Point III *supra,* it necessarily follows that he cannot pursue a tortuous interference claim.

It is well settled that an employer, as a party to an employment contract, cannot be held directly liable for tortuous interference with that relationship because the action of the parties to a contract are judged under contract law." *Printing Mart - Morristown v. Sharp Electronics Corp.*, 116 N.J. 739 (1989); *Muench v. Twnsp. of Haddon*, 255 N.J.Super. 288 (App. Div. 1992). Such claims can only be brought against a third-party interloper who interfered with the contractual relationship.    *Sandler v. Lawn-A-Mat Chemical and Equipment Corp.*, 141 N.J.Super. 437(App. Div. 1976), *certif. denied,* 71 N.J. 503(1976); *Fregara v. Jet Aviation Business Jets,* 764 F.Supp. 940, 955 (D.N.J. 1991).

Co-employees of a party to an employment contract cannot be held liable for interference when acting within the scope of their employment because, under these circumstances, they are not "interlopers" or "third parties" to the employment relationship. *Fregara, supra*, 764 F.Supp. at 955. As such, Plaintiff's tortuous interference claim against Ms. Fried should be dismissed.

20

327500v2

## CONCLUSION

For each of the reasons stated above, defendants Ross University School of Medicine, Dr. Jorge Rios and Michelle Fried respectfully request that this Court enter summary judgment in their favor and against plaintiff, John Horton, dismissing his Complaint, with prejudice.

Respectfully Submitted,

Lindabury, McCormick & Estabrook
Attorneys for Defendants


_/s John H. Schmidt, Jr._
John H. Schmidt, Jr.

Dated: August  15, 2005

327500v2