**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

JOHN D. HORTON,                            :
                                           :
       Plaintiff                 :
                                           :
       v.                        :     Civil Action No. 04-5658 (JAG)
                                           :
                                           :     **OPINION**
ROSS UNIVERSITY SCHOOL OF                  :
MEDICINE, et al.                           :
                                           :
       Defendants.               :
_____:


**GREENAWAY, JR., U.S.D.J.**

       This matter comes before the Court on the motion for summary judgment by Defendants

Ross University School of Medicine ("Ross"), Jorge Rios M.D., and Michelle Fried, and the

cross-motion for summary judgment by Plaintiff John D. Horton, pursuant to FED. R. CIV. P. 56.

For the reasons set forth below, Defendants' motion for summary judgment will be granted in

part and denied in part, and Plaintiff's cross-motion for summary judgment will be granted in

part and denied in part.

### BACKGROUND

       In January 2003, Ross advertised for the position of Medical Library Director for its

medical school located on the Caribbean island of Dominica.  (Certification of Kathleen

Connelly, hereinafter "Connelly Cert.", Ex. 6.)  The advertisement listed the following job

qualifications:

       (1) A masters degree in library sciences; (2) five to eight years professional

experience in an academic research or medical school library setting; (3) three to five years experience supervising professional librarians and/or library support; and (4) experience with current and development information services in academic medicine.

(Connelly Cert. Ex. 6.)

In an email dated January 13, 2003, Plaintiff submitted a resume to Ross.  (Connelly Cert. Ex. 7.)  Sometime between January 15 and 21, Dr. Jorge Rios ("Rios"), the Dean of Academic Affairs, conducted a telephone interview with Plaintiff and invited him to come to Dominica for an in-person interview.  (Horton Dep. 30:8-30:20.)  Ross University was to pay for all arrangements.  (Connelly Cert. Ex. 10.)  Plaintiff and Rios exchanged several emails regarding the logistics of the trip.  (Connelly Cert. Ex. 8.)  Rios instructed Plaintiff to get in touch with Michelle Fried ("Fried"), the travel coordinator, to make the arrangements for the trip.  (Id.)

Fried had several phone and email interactions with Plaintiff to coordinate his trip to Dominca.  (Connelly Cert. Ex. 10.)  On January 27, 2001, Fried sent an email to Rios claiming that she had a "bad feeling" about Plaintiff because of his demand that she take him off of the speakerphone when they spoke.  (Certification of Denise Sawitsch, hereinafter "Sawitsch Cert.", Ex. 1.)  In that email, Fried recommended that the interview with Plaintiff be postponed since they had two other candidates coming.  (Id.)  Subsequently, in an email to Fried from Tom Baker ("Baker"), a travel agent, also dated January 27, 2001, Baker described his interaction with Plaintiff as "odd."  (Sawitsch Cert. Ex. 3.)  Fried again contacted Rios about postponing Plaintiff's trip to Dominica and they instructed Baker to cancel the reservations.  (Id.)

On January 31, 2003, one day before the scheduled trip to Dominica, Plaintiff received an email from Fried explaining that the trip was postponed due to budgetary constraints, and that the

interview would be rescheduled at a future date.  (Pl.'s Resp. to Def.'s Interrog. #7.)  Plaintiff claims that Fried pressured Rios into canceling the interview because she did not want a Hispanic male over the age of forty working for the university.  (Horton Aff. ¶¶ 4–5.)

During the month of January 2003, Plaintiff withdrew his application for employment at Renton Technical College ("Renton"), which had offered him an interview for a job at comparable pay.  (Horton Dep. 35:23-36:1.)  Plaintiff claims that he cancelled his visit to Renton in reliance on the pending interview with Ross.  (Id. at 35:18-36:1.)  After Ross postponed Plaintiff's scheduled trip to Dominica, Plaintiff began working for Veteran's Health Administration Medical Center Library in February 2003.  (Sawitsch Cert. Ex. 4.)

On February 18, 2003, Plaintiff emailed a revised resume to Ross for the Medical Library Director's position.  (Connelly Cert. Ex. 13.)  The position for Medical Library Director was reposted on April 7, 2003.  (Connelly Cert. Ex. 2.)  On April 9, 2003, Plaintiff again sent his revised resume to Ross's Vice President of Human Resources, Christine Holmberg ("Holmberg").  (Sawitsch Cert. Ex. 4.)   Plaintiff sent yet another revised resume on August 14, 2003.  (Connelly Cert.  Ex. 14.)  Plaintiff then sent an email to Ross on August 18, 2003, inquiring about rescheduling the interview and asking for Rios's personal email address. (Sawitsch. Cert. Ex. 5.)

On August 19, 2003, Plaintiff visited the offices of Dominica Management and Ross University in Edison, New Jersey, asking to speak to Rios.  (Sawitsch Cert. ¶ 3.)  When Plaintiff was informed that Rios resided in Dominica, he allegedly began to yell at the receptionist.  (Id.) Plaintiff was given Rios's email address and asked to leave the premises.  (Id.)  Plaintiff again visited the Edison office on August 25, 2003, asking to speak with Holmberg.  (Sawitsch Cert. ¶

5.)  After Plaintiff was advised that Holmberg was not available, he allegedly began yelling at the receptionist, refusing to leave until he met with Holmberg.  (Id.)  Plaintiff was asked to leave the premises several times and was threatened with arrest.  (Id.)  Plaintiff claims that "because he was an [sic] Hispanic minority male over age forty (40), [he] was threatened with being lynched by the defendant's Gestapo/Security Unit if he did not stop bothering the lily white females at the defendant's Edison office."  (Pl. Compl. ¶ 6.)

On August 25, 2003, Holmberg sent Plaintiff a letter advising him that he was no longer being considered for the position of Medical Librarian at Ross University.  (Sawitsch Cert. Ex. 9.)  Plaintiff was also sent a letter on the same day notifying him that he was not welcome on Ross' premises due to his discourteous behavior during his unscheduled visits to the Edison office.  (Sawitsch Cert. Ex. 10.)

On January 10, 2004, Ross University hired Marilyn B. Sullivan ("Sullivan") for the position of Medical Library Director.  (Sawitsch Cert. ¶ 7.)  Sullivan had twenty-five years of experience in the medical library field and served as the chief of the health sciences libraries at the University of Missouri-Kansas City from 1983 to 1997.  (Sawitsch Cert. Ex. 11.)  At the time of her hire, Sullivan was seventy-three years of age.

**LEGAL STANDARD**

**I.    Summary Judgment**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See Abramson v. William Patterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001).

4

FED. R. CIV. P. 56(c) provides, in relevant part:

> "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A factual dispute between parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Krescholiek v. Southern Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248. The moving party "cannot simply reallege factually unsupported allegations contained in his pleadings." Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir. 1994). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 318 (1986); Blackburn v. United Parcel Serv. Inc., 179 F.3d 81 (3d Cir. 1999).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Sound Ship Bldg. Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but

rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  See Wahl v. Rexnord Inc., 624 F.2d 1169, 1181 (3d Cir. 1980); Boyle v. Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).  The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains.  See, e.g., Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

## II.    **Employment Discrimination: Disparate Treatment Claims**

All disparate treatment claims for employment discrimination under federal law are analyzed by application of the McDonnell Douglas test:

> The Court in McDonnell Douglas set forth a burden-shifting scheme for discriminatory-treatment cases.   Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination.   The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.  The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (citation omitted).

## DISCUSSION

### I.   Defendants' Motion For Summary Judgment

Defendants move for summary judgment on all claims brought by Plaintiff.  Defendants assert entitlement to judgment as a matter of law on Plaintiff's Title VII claim, his ADEA claim, his breach of contract claim, his fraudulent concealment claim, his fraudulent inducement claim, and his tortious interference with business relations claim.

### A.   Title VII and ADEA claims

Defendants argue that, for both the Title VII and the ADEA claims, Plaintiff has not established a prima facie case.  Alternatively, Defendants argue that Plaintiff cannot rebut the legitimate, nondiscriminatory reasons proffered by Defendants.

#### 1.   McDonnell Douglas Step 1: Prima Facie Case

"The burden of establishing a prima facie case of disparate treatment is not onerous." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  While McDonnell Douglas specifically addressed a case of hiring discrimination,

> [t]he importance of McDonnell Douglas lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that the employment decision was based on a discriminatory criterion illegal under the Act.

Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977).

To establish a prima facie case in a Title VII employment discrimination claim, Plaintiff must show that: 1) he is a member of a protected class; 2) he applied and was qualified for the position; 3) he was rejected despite having adequate qualifications; and 4) the position was ultimately filled by a person not of the protected class.  Sheridan v. E.I. Dupont de Nemours &

<u>Co.</u>, 100 F.3d 1061, 1066 (3d Cir. 1996).

    a.  Member of a Protected Class under Title VII

   Ross asserts that Plaintiff has not met the first element of the prima facie case because he is not a member of a protected class under Title VII, since Plaintiff is only one quarter Hispanic and he does not outwardly appear Hispanic.  Ross bases its argument on the holding of <u>Martinez v. Hazelton Research Animals, Inc.</u>, 430 F. Supp. 186, 187-88 (D. Md. 1977), which holds that a mere allegation that the plaintiff is Hispanic, without more, is insufficient to sustain a claim for discrimination on account of race under 42 U.S.C. § 1981.  The Third Circuit, however, relies on the Equal Employment Opportunity Commission's (EEOC) interpretation of Title VII, which concludes that a lack of standing under § 1981 does not imply a lack of protection under Title VII.  <u>Bennun v. Rutgers State Univ.</u>, 941 F.2d 154, 172 (3d Cir. 1991) (citing 29 C.F.R. § 1606.1 (1990)).  Thus, <u>Martinez</u> is inapplicable.

   In <u>Bennun</u>, the Court found that because Bennun's father traced his ancestry to Spain, he met the dictionary definition of Hispanic.  <u>Bennun</u>, 941 F.2d at 172-73.  Plaintiff here claims that he is Hispanic because his mother was half-Mexican.  As in <u>Bennun</u>, Plaintiff has Hispanic ancestry.

   However, <u>Bennun</u> also establishes that "unlawful discrimination must be based on [one's] objective appearance to others, not his subjective feeling about his own identity."  <u>Id.</u> at 173.  In this case, Defendants assert that Plaintiff does not appear to be Hispanic because he is "not dark skinned nor a 'colored male' and because Plaintiff speaks English very articulately and does not speak with an accent of an [sic] Hispanic male."  (Certification of Paul Mazer, ¶¶ 2-4.)  <u>Bennun</u>, however, did not rely on physical appearance, but on mannerisms, spoken language, and the fact

8

that Bennun held himself out to the world as Hispanic.  <u>Bennun</u>, 941 F.2d at 173.  The record in this case shows that Plaintiff held himself out to the world as Hispanic by circulating a resume that states that he is a Hispanic male over the age of forty.  (Connelly Cert. Ex. 7.)

While the question of whether Plaintiff qualifies as a member of a protected class is a difficult one, resolution of the claim of discrimination under Title VII does not turn on its answer.  Even if this Court determined that Plaintiff is a member of a class protected under Title VII, and that Plaintiff has made out a prima facie case, Plaintiff's claim fails at the third step of the <u>McDonnell Douglas</u> analysis, as will be discussed further below.

> b.      Plaintiff Applied and Was Qualified For the Position

In a determination of one's qualifications for a job in a Title VII case, the court considers the plaintiff's objective job qualifications.  <u>Weldon v. Kraft</u>, 896 F.2d 793, 798 (3d Cir. 1990).  The court attempts to compare the qualifications of the alleged victim of discrimination to the individual who was awarded the position.  <u>Bennun</u>, 941 F.2d at 176.

Defendants assert that Plaintiff cannot establish a prima facie case under Title VII because he was not qualified for the position.  Defendants point to the disparity between Plaintiff's experience, as shown on his resume, and those qualifications sought out by Ross in the advertisement.  Defendants also compare the qualifications of Plaintiff to those of Sullivan, who was ultimately hired for the position.

The record, however, demonstrates that Plaintiff was qualified enough to be invited to Dominica for an in-person job interview with Rios.  Moreover, in an email from Rios to Fried, dated January 27, 2003, Rios stated  "I am used to deal [sic] with very different people and indeed he has the most experienced CV."  (Sawitsch Cert. Ex. 1.)  Thus, it appears that

Defendants acknowledged Plaintiff as adequately qualified for the job during the interview process.

c.      Third and Fourth Elements of Prima Facie Case

As to the third prong of the Title VII prima facie case, the record shows that Plaintiff was rejected despite having adequate qualifications, since his interview was cancelled one day prior to his scheduled visit.  Plaintiff was also sent a letter by Holmberg in August 2003, explaining that he would no longer be considered for the job.  As to the fourth prong, Ross has not claimed that the successful applicant, Sullivan, was a member of the protected class.  Plaintiff has met the third and fourth elements of a prima facie case for discrimination under Title VII.

2.      <u>McDonnell Douglas</u> Step 2: The Employer's Response

If Plaintiff can establish a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  Ross meets this burden by providing three such reasons: 1) Plaintiff's resume demonstrates undesired work patterns and practices; 2) Plaintiff had insufficient medical library experience;  and 3) Plaintiff's "odd" behavior over the telephone, and in person, led Ross to terminate the consideration of Plaintiff for employment.  All of these reasons constitute legitimate reasons for discontinuing consideration of Plaintiff for employment.

The record shows that Plaintiff had undesirable work patterns and practices because he did not hold job positions for any significant amount of time.  Plaintiff's resume shows that he worked a total of four months at the United States Military Academy Library, eight months at the 20th Medical Group & Base Library, seven months at the Huron University Library, and eleven months at the Society of St. Pius X Library.  (Sawitsch Cert. Ex. 4.)  All of these jobs were held

10

in the period between 1997 and 2002.  Id.  Indeed, Holmberg, the Vice President of Human

Resources for Ross, read Plaintiff's resume and wrote in her notes that he "moved positions

frequently."  Id.

The record in this case also supports the second proffered reason: Plaintiff lacked medical

library experience.  The extent of medical library experience in Plaintiff's resume amounts to two

months as Library Technician at Veteran's Health Administration Medical Center Library, and

eight months as the Director of Medical Resource Center & Library at 20th Medical Group &

Base Hospital.  (Sawitsch Cert. Ex. 4.)  Plaintiff did not possess enough medical library

experience to satisfy the requirements of five to eight years of professional experience in a

medical school setting or three to five years of experience supervising professional librarians, as

stated in the Ross advertisement.  (Connelly Cert. Ex. 6.)  Indeed, Holmberg remarked in her

notes that Plaintiff did not have enough medical library experience.  (Sawitsch Cert. Ex. 4.)

The third reason proffered by Defendants is that numerous interactions with Plaintiff,

both over the telephone and in person, led Ross personnel to characterize Plaintiff as "odd" and

to feel serious discomfort with his behavior.  The record indicates that several Ross employees

felt that Plaintiff was "odd" and had been discourteous to them.  This ultimately led to

Defendants ending consideration of Plaintiff for employment and giving notice to him that he

was unwelcome on Ross' premises.  (Sawitsch Cert. ¶ 6.)  Contrary to Plaintiff's assertions, it

was not only Fried who commented on Plaintiff's behavior (Pl. Compl. ¶ 11); Baker, the travel

agent, independently described his interaction with Plaintiff as "odd."  (Sawitsch Cert. Ex. 3.)

Denise Sawitsch, the Director of Human Resources, wrote to Rios and described Plaintiff's

discourteous behavior towards both the receptionist and herself.  (Sawitsch Cert. ¶¶ 3 – 5.)  After

receiving a questionable email from Plaintiff on August 20, 2003, Rios wrote an email to Holmberg implying that Plaintiff was in need of a therapist.  (Sawitsch Cert. Ex. 8.)  Thus, Defendants have stated that Plaintiff's undesired work patterns, his lack of qualifications, and his behavior towards Ross personnel are the legitimate, non-discriminatory reasons that led to the termination of consideration of Plaintiff for the job.

               3.       <u>McDonnell Douglas</u> Step 3: Demonstrating Pretext

At the third step of the <u>McDonnell Douglas</u> analysis, the burden shifts back to the Plaintiff to show that the reasons articulated by Ross are not the true reasons, but rather a pretext for discrimination.  "[A] plaintiff may survive summary judgment by submitting evidence from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Stanziale v. Jargowsky</u>, 200 F.3d 101, 105 (3d Cir. 2000).  "This burden now merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination.  [He] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated that employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. at 256.

Plaintiff fails to show that the reasons proffered by Ross are pretextual.  Plaintiff has submitted no evidence to show racial discrimination other than his personal affidavit contending that his rejection for the position at Ross was due to his race and age.  The speculative and unsupported allegations of Plaintiff alone are not enough to survive a motion for summary judgment.  <u>See</u> <u>Ditze v. U.M.D.N.J.</u>, 962 F. Supp. 595, 606 (D.N.J. 1997) (granting summary

judgment to defendant where plaintiff's proofs consisted of nothing more than his vague perception that his supervisor became "cool" towards him after he disclosed his medical condition).

Plaintiff alleges that when Ross cancelled the interview, citing budget constraints, Ross was lying and thus engaged in discriminatory conduct.  However, Plaintiff has provided no evidence to show that the claim of lack of funding was untrue, nor does he provide evidence to show that the cancellation of his interview was due to something other than his "odd" interactions with Ross employees.

Furthermore, Plaintiff alleges that he would have been treated differently in the application and interview process had he been a similarly situated white female, under the age of forty.  Plaintiff points to no evidence to support this claim.

Plaintiff also alleges that Fried single-handedly pressured Rios into canceling his interview because she did not want a Hispanic male over the age of forty hired by Ross.  Again, Plaintiff provides no evidence to support this claim.  Additionally, Baker, Rios, Holmberg, and Sawitsch all expressed concern about Plaintiff's candidacy and it appears that all played a hand in the termination of the consideration of Plaintiff for employment.

Even if this court were to conclude that Plaintiff did make out a prima facie case of discrimination under Title VII,  Plaintiff has failed to carry his burden of showing, at Step 3 of the McDonnell Douglas test, that Ross's explanation for the termination of his candidacy is a pretext for race discrimination.  "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact finder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc

13

fabrication or otherwise did not actually motivate the employment action (that is, the proffered

reason is a pretext)." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citation omitted).

Plaintiff has not done so.

      This Court finds no genuine issue as to any material facts, and that Defendants have

shown that they are entitled to judgment as a matter of law.  Defendants' motion for summary

judgment on the Title VII claim will be granted.

      4.      Plaintiff Cannot Establish a Prima Facie Case Under the ADEA

      Under the ADEA, the elements to establish a prima facie case are nearly identical to the

Title VII standard, except for a modified fourth prong: the individual who receives the job must

be "sufficiently younger" than the person alleging the age discrimination.  Monaco v. Am. Gen.

Assurance Co., 359 F.3d 296, 303-04 (3d Cir. 2004).  In this case, Plaintiff is a member of the

protected class because he is forty years of age.  As previously discussed, Plaintiff meets the

second and third prongs of the test because he was qualified for the job and was ultimately

rejected despite adequate qualifications.  The failing point for Plaintiff, however, is the fourth

prong.  Defendants did not ultimately hire someone "substantially younger" than Plaintiff.

Rather, Ross hired someone substantially older: Sullivan was seventy-three at the time she was

hired by Ross.  Plaintiff has failed to make out a prima facie case under the ADEA.  Defendants'

motion for summary judgment on the claim for age discrimination will be granted.

      B.      UCC and Breach of Contract Claims

      Plaintiff alleges that Ross's cancellation of the in-person interview was a breach of

contract under "common law, statutes, and the Uniform Commercial Code of New Jersey." (Pl.

Compl. ¶ 8.)

"A contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). To be enforceable, a contract must also be accompanied by consideration. Friedman v. Tappan Dev. Corp., 22 N.J. 523, 533 (1956). In essence, both parties must "get something" out the arrangement. Oscar v. Simeonidis, 352 N.J. Super. 476 (N.J. Super. Ct. App. Div. 2002). "In bilateral contracts or agreements, such as the one in the case at hand, where the parties make mutual promises to do some future act, 'the consideration of the promise of one party is a promise on the part of the other.'" Friedman, 22 N.J. at 533.

The record shows that Ross made an offer to Plaintiff to come to Dominica for an interview and Plaintiff promised to come for the interview. Thus, under established contract principles, Plaintiff has shown that a contract was formed. Plaintiff has also shown that the contract was breached, since Ross cancelled the trip one day prior to Plaintiff's departure for Dominica.

Plaintiff has not, however, asked this Court for any specific remedy for the breach of contract. Plaintiff's Complaint seeks only "all just and equitable relief." (Pl. Compl. ¶ 6.) Nor does Plaintiff's cross-motion ask for any other remedy: there is no request for specific performance nor even an allegation of damages. In the absence of evidence of damages, Plaintiff has not established that he suffered any damages from the breach of contract.

Further, this Court shall not speculate about what damage might have resulted from the breach. "Damages claimed in a breach of contract action must be reasonably certain and not speculative." Prozel & Steigman v. Int'l Fruit Distrib., 171 F. Supp. 196, 200 (D.N.J. 1959). "Anticipated profits that are remote, uncertain or speculative . . . are not recoverable." Perth

Amboy Iron Works v. Am. Home Assurance Co., 226 N.J. Super. 200, 224 (N.J. Super. Ct. App. Div. 1988). There is no evidence in the record that Plaintiff purchased tickets, reserved hotel rooms, or spent any money in preparation for the trip to Dominica.

The record indicates that around the time of the scheduled Ross interview, Plaintiff did have an invitation to interview with Renton, which he declined. (Connelly Cert. Ex. 12.) However, the mere prospect of an interview for another job is not enough to entitle Plaintiff to damages: it is entirely speculative to assert that, were it not for Ross's breach, Plaintiff would have had employment with Renton. Furthermore, Plaintiff began a different job with the Veteran's Administration in the month following the cancellation of the interview. Thus, Plaintiff has failed to ask for damages, to articulate allegations of damage, and to present evidence of damage. Lastly, no damage is apparent.

This Court finds a breach of contract, but no evidence of damage from the breach. Plaintiff's motion for summary judgment on the claim for breach of contract will be granted, and Plaintiff is awarded zero damages.

Plaintiff also asserts that under the Uniform Commercial Code of New Jersey ("NJ UCC"), Ross breached its contract with him to interview for the position of Library Director. This claim is without merit because employment contracts are not within the scope of the NJ UCC. N.J. Stat. Ann. § 12A: Ch. 1-10.[1]

_____

[1] The NJ UCC states:

> (1) This Act shall be liberally construed and applied to promote its underlying purposes and policies.
> (2) Underlying purposes and policies of this Act are
>     (a) to simplify, clarify and modernize the law governing commercial transactions;

C.        Fraudulent Concealment Claim

In the claim for fraudulent concealment, Plaintiff alleges that Ross failed to "properly, adequately, and timely disclose its decision to breach the contract."  (Pl. Compl. ¶ 9.)  A successful fraudulent concealment claim depends on Plaintiff suffering damages due to the non-disclosure of some material fact by Ross.  Plaintiff does not state a cognizable claim for fraudulent concealment, no less provide any evidence for such a claim.  Rather, Plaintiff has made a vague and conclusory allegation.

To prevail in a case of fraud, Plaintiff must establish: 1) a material misrepresentation of a presently existing or past fact; 2) knowledge of the falsity by the person making the misrepresentation; 3) intent that the misrepresentation will be relied upon; 4) reliance on the misrepresentation; and 5) resulting damages.  Napp v. Anschelewitz, Barr, Ansell & Bonnello, 97 N.J. 37, 51-52 (1984).  Accordingly, fraudulent concealment occurs when one party fails to disclose a material fact to another party, in the face of a duty to disclose that fact, thereby causing damages.  See N.J. Econ. Dev. Auth. v. Pavonia, 319 N.J. Super 435, 446 (N.J. Super. Ct. App. Div. 1981) (citation omitted) (stating that "the concealed facts 'must be facts which if known . . . would have prevented [the obligor] from obligating himself, or which materially increase his responsibility'").

_____

(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
(c) to make uniform the law among the various jurisdictions.

N.J. Stat. Ann. § 12A:12-4(1), (2).

Plaintiff has not alleged or offered any evidence of elements one through five in his claim for fraudulent concealment.  Plaintiff also provides no evidence to support his vague and conclusory allegation that Ross did not disclose to him the cancellation of the trip, nor does he provide evidence of damages from the cancellation of the trip.  In fact, Plaintiff provides evidence to the contrary by stating that he was informed of the cancellation of the trip to Dominica by an email from Fried on January 31, 2003, one day prior to the trip.  (Pl. Compl. ¶ 4.)  Additionally, as discussed previously in the Breach of Contract Claim, Plaintiff has not established that he suffered any damages as a result of the cancellation of the trip.  Plaintiff has failed to show that any genuine issues as to material facts exist which preclude judgment as a matter of law.  Defendants' motion for summary judgment shall be granted.

      D.      Fraudulent Inducement Claim

As to the claim of fraudulent inducement, Plaintiff alleges that Ross fraudulently induced him into relying on the Ross invitation to interview, causing him to decline his offer for an interview for the position as Library Director at Renton.  (Pl. Compl. ¶ 10.)  Plaintiff, however, does not articulate an argument, nor offer any evidence, in support of this claim.

As previously mentioned, to prevail in a case of fraud, Plaintiff must establish: 1) a material misrepresentation of a presently existing or past fact; 2) knowledge of the falsity by the person making the misrepresentation; 3) intent that the misrepresentation will be relied upon; 4) reliance on the misrepresentation; and 5) resulting damages.  Napp v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. at 51-52.  Additionally, "[f]raud requires clear and convincing proof."  Fox v. Mercedes-Benz Credit Corp., 281 N.J. Super. 476, 484 (N.J. Super. Ct. App. Div.1995).  Thus, in a case of fraudulent inducement, a plaintiff must convincingly show that there was an

intentional material misrepresentation of fact and that the plaintiff reasonably relied on that fact to his detriment.  See McConkey v. AON Corp., 354 N.J. Super. 25, 49 (N.J. Super. Ct. App. Div. 2002) (finding that defendant misrepresented the status of its company and that plaintiff reasonably relied on the information as an inducement to leave his former employer to work for defendant).

Plaintiff has not sufficiently alleged the elements of fraud, no less presented any evidence of fraudulent inducement.  The record shows that there was no "material misrepresentation of a presently existing or past fact," because Ross did make the arrangements for Plaintiff to come to Dominica and cancelled the reservations prior to the trip.  (Sawitsch Cert. Ex. 3.)  Plaintiff has provided no evidence to show that the promise of the trip was a misrepresentation, and the record indicates that at the time the promise was made, it was in fact the truth.  Accordingly, regarding the second element, there is no evidence in the record to show that if indeed the promise of the trip to Dominica was a misrepresentation, that Ross knowingly made a misrepresentation.  The record indicates that Ross fully intended to have Plaintiff come to Dominica for the interview until Defendants became concerned about Plaintiff's behavior on the telephone.  Thus, Plaintiff has not brought forth evidence that creates a genuine issue as to a material fact of whether Ross knowingly made a misrepresentation about the promised trip to Dominica.

As to the third element, the record shows that Ross did intend for Plaintiff to rely on its promise of the trip to Dominica because Rios wanted Plaintiff to interview as soon as possible. (Sawitsch Cert. Ex. 1.)  However, as to the reasonableness of Plaintiff's reliance on the promise, Plaintiff relied on the promise of the trip to Dominica for a job interview as if it were an actual job offer.  This type of reliance was unreasonable.  Plaintiff stated in his deposition that "at the

time, the Dominica position looked so promising that I was trying to put all my eggs in that

basket," and "I felt that the Dominica position was in the bag." (Horton Dep. 36:4-36:6, 36:23-

36:24.) However, Plaintiff acknowledged that Rios did not offer him the medical library

director's position nor did he have the authority to do so. (Id. at 64:17-65:1.) Thus, Plaintiff has

not presented evidence to create a genuine issue as to any material fact regarding his fraudulent

inducement claim. Therefore, Defendants are entitled to summary judgment as a matter of law.

   E.  Tortious Interference Claim

   Plaintiff asserts that Fried tortiously interfered with his contractual and business

relationship with Ross. (Pl. Compl. ¶ 11.) "The tort of interference with a business relation or

contract contains four elements: (1) a protected interest; (2) malice--that is, defendant's

intentional interference without justification; (3) a reasonable likelihood that the interference

caused the loss of the prospective gain; and (4) resulting damages." MacDougall v. Weichert,

144 N.J. 380, 404 (1996). Such claims can only be brought against a third-party interloper who

tortiously interfered with the business relationship. Sandler v. Lawn-A-Mat Chem. and Equip.

Corp., 141 N.J. Super. 437 (N.J. Super. Ct. App. Div. 1976).

   Co-employees of a party to an employment relationship cannot be held liable for

interference when acting within the scope of their employment because, under these

circumstances, they are not "interlopers" or "third parties" to the employment relationship. See

DiMaria Const., Inc. v. Interarch, 351 N.J. Super. 558, 561 (N.J. Super. Ct. App. Div. 2001)

(citation omitted) (stating that "[i]f an employee or agent is acting on behalf of his or her

employer or principal, then no action for tortious interference with a business relationship or

contract will lie"). The record shows that Fried communicated with Rios about Plaintiff as part

of her job.  She was responsible for scheduling his trip and thus had reason to communicate directly with Plaintiff and to share with Rios any concerns she had about her interactions with Plaintiff.  As such, Plaintiff has not created a genuine issue as to any material fact in his tortious interference claim against Fried.  Summary judgment is granted to Defendants as a matter of law.

## II.   **Plaintiff's Motion for Summary Judgment**

Plaintiff cross-moved for summary judgment on all issues.  For the reasons set forth above, Plaintiff's motion for summary judgment will be granted, only as to the breach of contract claim.  Plaintiff will be awarded zero damages.  Plaintiff's motion for summary judgment as to the remaining claims is denied for the reasons set forth above.  Furthermore, Plaintiff's motion for assignment of counsel is denied as moot, since the case has been resolved on summary judgment. [2]

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is denied, as to

---

[2]Counsel may be appointed to a civil litigant pursuant to 28 U.S.C. § 1915(e).  The assignment of Counsel is within the sound discretion of the Court based on the Court's determination that the plaintiff's claim has "some merit in fact and law," and the Court considers the following factors:

(1) the plaintiff's ability to present his her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; (6) whether the plaintiff can attain and afford counsel on his own behalf."

Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997) (citing Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993))
Here, Plaintiff's claims fail to survive Defendants' summary judgment, therefore a detailed analysis of the Parham factors is not necessary.

the claim for breach of contract.  Defendants' motion for summary judgment is granted, as to all claims other than the claim for breach of contract.  Plaintiff's cross-motion for summary judgment is granted, as to the claim for breach of contract, and Plaintiff is awarded damages in the amount of $0.00.  Plaintiff's cross-motion for summary judgment is denied, as to all claims other than the claim for breach of contract.  Plaintiff's motion for assignment of counsel is denied as moot.

  S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: March 30, 2006

22